## IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| SETH KINDERMAN, | § | |
| | § | No. 235, 2022 |
| Defendant Below, | § | |
| Appellant, | § | |
| | § | |
| | § | Court Below: Superior Court |
| v. | § | of the State of Delaware |
| | § | |
| STATE OF DELAWARE, | § | Cr. ID No. 1812002492(N) |
| | § | |
| Appellee. | § | |

Submitted: April 26, 2023
Decided: July 20, 2023

Before **SEITZ**, Chief Justice; **VALIHURA** and **TRAYNOR**, Justices.

Upon appeal from the Superior Court. **AFFIRMED**.

Elliot Margules, Esquire, OFFICE OF THE PUBLIC DEFENDER, Wilmington, Delaware, *for Defendant Below, Appellant Seth Kinderman*.

Carolyn S. Hake, Esquire, DELAWARE DEPARTMENT OF JUSTICE, Wilmington, Delaware, *for Appellee State of Delaware*.

**SEITZ**, Chief Justice:

A New Castle County grand jury indicted Seth Kinderman for the murder of Jakeith Latham. Eventually, he pled guilty to second-degree murder, attempted robbery, and possession of a firearm during the commission of a felony. In exchange for the guilty plea, the State agreed to a joint recommendation of thirty years of Level V incarceration. A few months later, Kinderman sought to withdraw his guilty plea. He claimed his plea counsel failed to advise him of the specific charges in the plea agreement and failed to conduct a mitigation investigation for use during plea negotiations. The Superior Court denied the plea withdrawal motion and sentenced Kinderman to thirty-seven years of Level V incarceration.

Kinderman argues on appeal that the Superior Court erred in denying the motion to withdraw his plea because he did not knowingly and voluntarily enter into the plea agreement, and the plea was the result of ineffective assistance of counsel. We disagree and affirm the Superior Court's judgment. As the Superior Court found, Kinderman did not show a "fair and just reason" to withdraw his guilty plea.

I.

A.

New Castle County Police ("NCCP") arrested Seth Kinderman for the murder of Jakeith Latham. A New Castle County grand jury indicted Kinderman for murder first degree, robbery first degree, and two counts of possession of a firearm during

2

the commission of a felony. Attorneys Eugene Maurer and Elise Wolpert represented him (collectively, "plea counsel"). Maurer met with Kinderman before Kinderman's preliminary hearing in January 2019. The next meeting with plea counsel did not occur until January 4, 2021 due to the COVID-19 pandemic.

On September 29, 2020, the State sent a written plea agreement to plea counsel. Under the plea agreement, Kinderman would plead guilty to second degree murder, attempted robbery, and possession of a firearm during the commission of a felony. In exchange, the State and the defense would recommend a sentence of thirty years at Level V incarceration. The plea agreement expired May 31, 2021.

In 2020 and 2021, the State and plea counsel filed various suppression motions and motions *in limine*. The court delayed argument on the motions because of the COVID-19 pandemic and Kinderman's desire to attend the hearing in-person. The court scheduled oral argument on the motions for June 18, 2021, but Kinderman pled guilty before that date.

On January 4, 2021, Maurer had his second meeting with Kinderman by videophone. Kinderman testified that during this meeting Maurer told him "that there was no plea offered yet, but that the last time [Maurer] had lunch with the prosecution, they had been thinking about 30 [years]."[1] Wolpert testified that she did not remember when she learned of the plea agreement but knew "that in early

---

[1] App. to Opening Br at A80 (Kinderman's Direct Examination).

3

2021, our discussions were primarily surrounded around the evidence against him, and that dovetailed into conversations regarding the plea."[2]

Kinderman testified that he first learned of a concrete plea offer during a May 5, 2021 videophone call with Maurer – just a few weeks before the plea agreement's May 31 expiration date.[3] Following the videophone call, Maurer sent Kinderman a letter confirming their discussion about the plea offer.[4]

The May 5th letter did not include a copy of the plea agreement. The letter also did not (i) recite the fact that the plea was also for attempted robbery and possession of a firearm during the commission of a felony; (ii) mention that the proposed sentence was only a recommendation; or (iii) say that the plea was a joint recommendation by the defense and the State.[5] Wolpert testified that the specific terms of the agreement – including the existence of the two other charges – were discussed with Kinderman before the plea hearing.[6] Wolpert also testified that she was confident that Kinderman understood the plea offer and that he accepted the plea offer freely and voluntarily without any sign of hesitation.[7]

---

[2] *Id.* at A130 (Wolpert's Direct Examination).
[3] *Id.* at A84 (Kinderman's Direct Examination). Kinderman later testified that the May 31 deadline was not brought up during the May 5 meeting, and that it was something he learned about when he received the May 5th letter. *Id.* at A88.
[4] *Id.* at A86-87.
[5] *Id.* at A86-87, A251.
[6] *Id.* at A140-41 (Wolpert's Direct Examination).
[7] *Id.* at A152-53.

Kinderman testified that he asked Maurer to meet again at the end of May "because [he] wasn't comfortable with everything going on at that time."[8] Kinderman was supposed to have a video conference with Maurer on May 26, 2021, but the meeting did not take place due to technical difficulties.[9]

## B.

According to Kinderman, guards woke him up early the morning of June 11, 2021, and took him to the courthouse for the plea hearing.[10] Kinderman testified that when he arrived at the courthouse, he met with Maurer before the plea hearing to discuss the plea agreement, and to sign the plea agreement truth-in-sentencing ("TIS") form. He claimed that this was the first time he saw the plea agreement, and, according to Kinderman, the first time that Maurer advised him that the plea agreement included two other charges – attempted robbery and possession of a firearm during the commission of a felony.[11] Kinderman also testified that Maurer told him that he needed to accept the plea offer, and that if he did not, his suppression motions would not be heard, he would lose at trial, and he would be sentenced to life in prison.[12]

---

[8] *Id.* at A92 (Kinderman's Direct Examination).

[9] *Id.* at A92-93.

[10] *Id.* Kinderman testified that he fell asleep that morning at 2:00 a.m. and had only two hours of sleep before he was awakened for transfer and court.

[11] *Id.* at A82-83. Kinderman testified that Maurer told him that the two additional charges came up "last minute." *Id.* The two charges were included in the plea agreement eight and a half months earlier.

[12] *Id.* at A82.

Immediately after Maurer's meeting with Kinderman, the court held a plea hearing. The State read the terms of the plea agreement, and Maurer confirmed the accuracy of its terms.[13] The court then conducted a colloquy with Kinderman. The court repeated the terms of the plea agreement and confirmed that Kinderman understood its terms. The court informed Kinderman that his right to a trial would be waived after entry of a guilty plea and explained the sentencing guidelines.[14] The court also asked about Maurer's representation – whether Maurer fully explained Kinderman his rights, reviewed the plea agreement and TIS form, and if Kinderman was satisfied with Maurer's representation.[15] Kinderman responded yes to each question and said that Maurer answered his questions about the TIS form.[16] Finally, the court confirmed that Kinderman's answers were truthful.[17]

The court then read each charge and asked Kinderman if he understood the charge, whether he committed the offense, and what was his plea.[18] For each charge, Kinderman responded that he understood the charge, that he committed the offense, and pled guilty.[19] The court accepted Kinderman's plea and found it knowing,

---

[13] *Id.* at A16-18 (plea hearing transcript).
[14] *Id.* at A21-25.
[15] *Id.* at A26-27.
[16] *Id.*
[17] *Id.* at A27.
[18] *Id.* at A28-30.
[19] *Id.*

intelligent, and voluntary.[20] The court ordered a presentence investigation ("PSI") and deferred sentencing pending receipt of the PSI.[21]

C.

About three months after pleading guilty to the charges, Kinderman filed a *pro se* motion to withdraw his guilty plea.[22] In his *pro se* motion, Kinderman argued that he did not receive a copy of all of the State's discovery from plea counsel, the suppression motions were still outstanding at the time of his guilty plea, and that plea counsel misrepresented information about his case and pressured him to accept the guilty plea.[23]

Plea counsel withdrew their representation, and attorney Kathryn van Amerongen entered her appearance.[24] On January 7, 2022, van Amerongen filed a motion to withdraw Kinderman's guilty plea for the same reasons included in Kinderman's *pro se* motion.[25]

At the plea withdrawal hearing, Kinderman testified that he sought to withdraw his guilty plea because plea counsel: (i) misrepresented the terms of the plea agreement (the existence of additional charges, the minimum mandatory sentence, and the joint recommendation for sentencing); (ii) waited too long in

---

[20] *Id.* at A30.
[21] *Id.*
[22] *Id.* at A253-56 (motion to withdraw guilty plea).
[23] *Id.* at A255.
[24] *Id.* at A257 (Court Order), A305 (mitigation report).
[25] *Id.* at A259-263, A305.

7

advising him of the plea agreement; (iii) failed to provide him with copies of the discovery received from the State; (iv) failed to conduct a mitigation investigation and obtain a mitigation report;[26] and (v) pressured him to accept the plea agreement. He also stated that he was rattled and sleep-deprived before the plea hearing.[27]

Plea counsel testified that although they did not obtain a mitigation report for purposes of the plea negotiations, they used other strategies to negotiate a better plea agreement, including offering Kinderman as a cooperating witness in an unrelated arson case.[28] Plea counsel also testified that a mitigation report would have been of no value, because the State made clear that "the plea offer was never coming down" given the strength of the State's case and the horrific nature of the crime.[29]

At the end of the plea withdrawal hearing, the court issued a bench ruling denying Kinderman's motion. The court started out by explaining that a "fair and just reason" was required for Kinderman to withdraw his guilty plea. The court noted that the defense had focused on only three of the five factors to assess when a defendant moves to withdraw their plea – whether the plea was knowing and

---

[26] According to Kinderman, a mitigation report would have revealed that (i) he had no criminal history; (ii) despite a tumultuous upbringing he was a model citizen who aimed to help others; (iii) he was in the Boy Scouts as an Eagle Scout; and (iv) he was gainfully employed.
[27] *Id.* at A96-99 (Kinderman's Direct Examination).
[28] *Id.* at A146 (Wolpert's Direct Examination).
[29] *Id.* at A189 (Maurer's Redirect Examination), A164-65 (Maurer's Direct Examination).

voluntary, whether he was adequately represented, and whether withdrawing the plea would prejudice the State or the court.[30]

Considering the knowing and voluntary nature of the plea, the court explained that Kinderman was bound by the answers he provided during the colloquy, absent clear and convincing evidence to the contrary.[31] Regarding Kinderman's assertion that he was not advised of the two additional charges and joint sentencing recommendation until immediately before the plea hearing, the court observed that Kinderman's plea hearing was delayed to allow Maurer time to confer with Kinderman beforehand.[32] The court also noted that the court's colloquy with Kinderman addressed the trial rights that Kinderman waived by entering a guilty plea and explained the sentencing guidelines.[33]

Next, the court addressed whether plea counsel provided adequate representation using the two-prong *Strickland*[34] test: whether plea counsel's representation fell below a reasonable standard, and whether the errors resulted in prejudice. The court did not directly address the first prong, but noted that it was "troubling" that there were no attorney-client meetings between January 2019 and January 2021.[35] The court stated, however, that the lack of meetings between plea

---

[30] *Id.* at A226.
[31] *Id.* at A228.
[32] *Id.*
[33] *Id.* at A229.
[34] *Strickland v. Washington*, 466 U.S. 668 (1984).
[35] App. to Opening Br. at A231.

9

counsel and Kinderman resulted from the COVID-19 pandemic and that plea counsel kept Kinderman apprised of case developments through letters.[36] The court also pointed out that during the plea colloquy, Kinderman indicated that he was satisfied with Maurer's representation, and that he reviewed the plea agreement and TIS form and understood everything in the forms.[37] The court did not address whether plea counsel's failure to obtain a mitigation report fell below reasonable standards, but found that the mitigation report likely would not have impacted plea negotiations, based on the State's refusal to move from the thirty-year recommendation after receiving the mitigation report.[38]

As far as prejudice was concerned, the court relied on the fact that the case was four years old, withdrawing the guilty plea would put the case back at square one and back on the calendar, and it would be difficult to prepare the case for trial after a significant delay.[39]

### D.

Following the court's ruling, the defense secured a mitigation report, and a PSI was submitted to the court. The PSI contained for the most part the same facts as the mitigation report and provided more details about the murder and the evidence

---

[36] *Id.*
[37] *Id.* at A230.
[38] *Id.* at A233.
[39] *Id.* at A231.

connecting Kinderman to the murder. Despite some positive statements in the mitigation report and the PSI, the court noted that Kinderman's "involvement in this incident sort of belie[d] any favorable impression he create[d]" and, in the court's view, Kinderman was "not a good person."[40] The court sentenced Kinderman to an aggregate of fifty years of Level V incarceration, suspended after thirty-seven years for decreasing levels of supervision.[41] The court exceeded the sentencing guidelines and the joint recommendation, citing an undue depreciation of the offense and Kinderman's need for correctional treatment.[42]

## II.

On appeal, Kinderman contends that the Superior Court erred in denying his plea withdrawal motion. This Court reviews the denial of a motion to withdraw a guilty plea for abuse of discretion.[43] Under Superior Court Criminal Rule 32(d), a court may grant a motion to withdraw a guilty plea, made before sentencing, "upon a showing by the defendant of any fair and just reason."[44] When assessing whether a defendant has offered a "fair and just reason" for his plea withdrawal, the court evaluates five factors: (1) whether there was a procedural defect in taking the plea, (2) whether the defendant knowingly and voluntarily consented to the plea

---

[40] *Id.* at A249.
[41] *Id.*
[42] App. to Opening Br. at A250.
[43] *Blackwell v. State*, 736 A.2d 971, 972 (Del. 1999) (citing *Patterson v. State*, 684 A.2d 1234, 1237 (Del. 1996)).
[44] Del. Super. Ct. Crim. R. 32(d).

11

agreement, (3) whether there is a basis to assert legal innocence, (4) whether legal counsel was adequate, and (5) whether granting the motion would prejudice the State or unduly inconvenience the court.[45] Kinderman's appeal focuses on the second, fourth, and fifth factors. Each will be addressed in turn.

## A.

Kinderman argues he did not knowingly and voluntarily consent to the plea agreement because he was not fully informed of its essential terms. There are some parts of the record that suggest that, at least initially, plea counsel did not fully inform him of all the express terms. One example is the May 5th letter, which omits the two additional charges[46] and misdescribes the thirty-year *joint* sentencing recommendation as an agreed-upon sentence. But plea counsel testified that they discussed the two additional charges and sentencing guidelines with Kinderman during earlier meetings, which the court found credible.

Kinderman directs us to *Patterson v. State*, where this Court cited the lack of time for the defendant to discuss counsel's errors before pleading guilty to find that the defendant's guilty plea was not knowing and voluntary.[47] In this case, however,

---

[45] *Scarborough v. State,* 938 A.2d 644, 649 (Del. 2007).
[46] The two additional charges are for attempted robbery and possession of a firearm during the commission of a felony.
[47] 684 A.2d 1234 (Del. 1996).

Kinderman was offered additional time to confer with plea counsel about the details of the plea agreement and Kinderman demurred.[48]

Equally important, at the plea hearing, the court read each charge, asked Kinderman if he understood the charge, asked whether he committed the offense, and asked how he wished to plead. Kinderman responded that he understood each charge, that he committed the conduct underlying each charge, and he pled guilty to each charge.

Kinderman also argues that he was unaware that his guilty plea would waive disposition of the suppression motions. But Kinderman was aware that his suppression motions were outstanding at the time of his guilty plea.[49] It is difficult to believe that Kinderman, who was described by the court as having above-average intelligence, truly believed that pre-trial motions would continue after entering a guilty plea. Plea counsel also testified that they specifically advised Kinderman that the guilty plea would waive disposition of the suppression motions.[50] Kinderman did not have any reservations about speaking up in court. During the hearing on plea counsel's motion to withdraw, Kinderman asked the court for clarification on a

---

[48] "THE COURT: Have you had enough time to do that this morning?
MR. MAURER: We have. I think so. I'm satisfied, if Mr. Kinderman is satisfied." App. to Opening Br. at A18. The court did not ask Kinderman directly if he wanted more time to confer with counsel, but Kinderman did not speak up after this exchange between the court and Mr. Maurer.
[49] Kinderman testified that he asked Maurer several times about the status of the suppression motions and testified that Maurer continued to "shrugged [him] off." *Id.* at A91.
[50] *Id.* at A153.

13

procedural matter, despite Wolpert's representation that she and Maurer previously discussed Kinderman's question with him.

B.

Kinderman argues that plea counsel were ineffective because they did not conduct a mitigation investigation or obtain a mitigation report, which prevented them from negotiating a better plea agreement[51] and did not adequately advise Kinderman of the likely outcome of sentencing.[52] "To succeed on an ineffective assistance of counsel claim, a movant must demonstrate that counsel's representation 'fell below an objective standard of reasonableness' and 'that the deficiencies in counsel's representation caused him substantial prejudice.'"[53]

Under the reasonableness prong of the *Strickland* test, "[m]ovants face a 'heavy burden' in demonstrating that counsel's performance was objectively unreasonable because there is 'a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance.'"[54] "Objectively unreasonable performance is performance where 'no reasonable lawyer would have

---

[51] Kinderman contends that mitigation was the only tool available to negotiate a plea, because the evidence against him was overwhelming, the State rejected counsel's offer to lower the sentence in exchange for his cooperation in an unrelated arson, and no other co-conspirators were charged. Kinderman also claims that a mitigation report could have, at a minimum, assisted with the ancillary terms of the plea agreement, such as the "joint" sentence recommendation, which precluded Kinderman from later arguing for less than a thirty-year sentence.

[52] Opening Br. at 15-25.

[53] *Owens v. State,* 2023 WL 4534933, *5 (Del. July 13, 2023) (quoting *Strickland*, 466 U.S. at 689).

[54] *Id.* (quoting *Strickland,* 466 U.S. at 687-88).

conducted the defense as [this] lawyer did.'"[55]   Under the prejudice prong, "a

defendant must show that there is a reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been different."[56]

In the context of a plea agreement, the defendant must show that "there is a

reasonable probability that, but for counsel's errors, [the defendant] would not have

pleaded guilty and would have insisted on going to trial."[57]  "Where the alleged error

of counsel is a failure to investigate, a determination of 'prejudice' to the defendant

by causing him to plead guilty depends upon the likelihood that the additional effort

by counsel would have led to a change in counsel's recommendation as to that

plea."[58]

The Superior Court did not directly address the reasonableness prong and plea

counsel's failure to conduct a mitigation investigation before the plea hearing.  The

record does not, however, support a finding that plea counsel's performance fell

below reasonable standards.  Plea counsel testified that they made several attempts

to negotiate a better plea offer, using other strategies, and that the State made it clear

from the beginning that it would not accept anything less than thirty years.  Even

after the mitigation report was prepared, the State never signaled that it would reduce

---

[55] *Id.* (alteration in original).
[56] *Id.* (quoting *Starling v. State*, 130 A.3d 316, 325 (Del. 2015)).
[57] *Hicks v. State*, 2008 WL 3166329, at *4 (Del. Aug. 7, 2008) (internal quotations omitted).
[58] *Albury v. State*, 551 A.2d 53, 59 (Del. 1988) (citing *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985)).

15

the offer and stated that "this was never a minimum mandatory case for the State. That was reflected in the State's plea offer."[59]

Even if we assume that plea counsel's failure to conduct a mitigation investigation before the plea hearing fell below reasonable standards of practice, the record supports the Superior Court's finding that Kinderman was not prejudiced. First, Kinderman never argued that he would have rejected the plea agreement and gone to trial. To prove prejudice, Kinderman had to show that, if plea counsel obtained a mitigation report and the State's plea offer remained at thirty years, he would have rejected the plea agreement and taken his chances at trial, where he faced a first-degree murder conviction and mandatory life sentence. Kinderman's argument rests instead on speculation that the State would have offered a more favorable plea deal when presented with a mitigation report.

Second, Kinderman conflates the impact of a mitigation report on the *sentence* he received with the joint sentencing *recommendation*. The plea agreement contained a joint sentencing *recommendation*, not a sentencing *agreement*. The Superior Court retained discretion over sentencing, and Kinderman was advised of that in the plea agreement, the TIS form, and during the plea colloquy.[60] Moreover,

---

[59] App. to Opening Br. at A247.
[60] *Id.* at A18-27. *See also State v. Baynard*, 2019 WL 6655642, at *2 (Del. Super. Dec. 5, 2019) (relying on the colloquy regarding minimum and maximum sentences to refute the defendant's assertion that he believed the TIS form was a binding sentence to be imposed by the court).

the court reviewed the mitigation report before sentencing, but was unpersuaded by its contents. The court explained that, notwithstanding some positive attributes and Kinderman's above-average intelligence, he still participated in a crime that resulted in Latham's death.[61]

In *Timmons v. State*, this Court rejected an ineffective assistance claim for nearly identical reasons.[62] The defendant in *Timmons* appealed the denial of his motion for postconviction relief and motion for correction of an illegal sentence. He argued that "his counsel provided ineffective assistance by failing to investigate mitigating evidence with respect to [the defendant's] character and background and by failing to explain fully the nature of the charges to which he was pleading guilty."[63] This Court rejected the argument and explained that "[t]here [was] no evidence that, but for errors on the part of his counsel, Timmons would not have pleaded guilty but would have insisted on proceeding to trial."[64] There is no evidence here that, but for counsel's alleged errors, Kinderman would not have pled guilty but would have insisted on going to trial.

---

[61] App. to Opening Br. at A233.
[62] 2003 WL 22214029 (Del. Sept. 23, 2003).
[63] *Id.* at *1 (Del. Sept. 23, 2003).
[64] *Id.*

## C.

Finally, Kinderman argues that it was error for the court to find that the age of the case would prejudice the State, because the delay was attributable to the pandemic and the State's indictment delay, and there was no evidence that witnesses were then, or would become, unavailable. Kinderman has not shown that the Superior Court abused its discretion by finding prejudice. The murder took place six years before the hearing. Two years had elapsed since the State prepared for trial. It was within the trial court's discretion to determine whether the two-year delay would prejudice the State under the circumstances of this case.

## IV.

We affirm the judgment of the Superior Court.